UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| MARK DANIEL EATON, )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW SAUL[1], Commissioner)<br>Of Social Security, )<br>)<br>   Defendant. ) | CV418-069 |

## REPORT AND RECOMMENDATION

Plaintiff Mark Daniel Eaton seeks judicial review of the Social Security Administration's denial of his application for Disability Insurance Benefits (DIB).

## I.   GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may

---

[1] On June 17, 2019, Andrew Saul was sworn in as the Commissioner of Social Security. The Clerk of Court is **DIRECTED** to update the caption accordingly.

not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[2] to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the

---

[2] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

## II.  ANALYSIS

Eaton, who was 49 years old when his DIB claim was denied, alleges disability beginning on October 29, 2013. Tr. 10. He has a high school education, is able to communicate in English, and past job experience as a military pilot and personal trainer. Tr. 21. After a hearing, the ALJ issued an unfavorable decision. Tr. 10-23. He found that Eaton's lumbar degenerative disc disease, sciatica, migraine headaches, post-traumatic stress disorder, depression, and alcohol abuse constituted severe impairments but did not meet or medically equal a Listing. Tr. 12-13. The ALJ thus found that Eaton retained the RFC for light work except

> . . . he should no more than occasionally climb ladders, ropes, and scaffolds; stoop; crouch; and crawl. Moreover, he is capable of frequently balancing and climbing of ramps and stairs. He is limited to simple, routine, repetitive tasks with only sporadic public contact and occasional contact with co-workers. Finally, the work should be low stress defined as

> only occasional changes in work setting and occasional decision making.

Tr. 15. Plaintiff, he determined, could not perform his past relevant work but could perform the requirements of representative work such as assembler II; assembler, nuts and bolts, and electronics worker, all sedentary work with an SVP of $2^3$. Tr. 22. Eaton disagrees, arguing that the ALJ erred in his evaluation of the medical evidence and opinions. Docs. 19 & 21.

An ALJ is entitled to formulate an RFC and resolve any ambiguity or inconsistency in the medical evidence, 20 C.F.R. §§ 416.927(d)(2), 946(c), based on the entire record, 20 C.F.R. §§ 404.1520a (evaluation of mental impairments), 416.945(a)(3) (the RFC is based on all the relevant evidence, including diagnoses, treatment, observations, and opinions of medical sources, as well as witness testimony). The RFC represents the most a claimant can do despite his limitations, SSR[4] 96-8p, and it is the

---

[3] Specific Vocational Preparation (SVP) is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, App. C.

[4] Social Security Rulings (SSR) "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). SSRs are entitled to deference, but are not binding on the courts. *Fair v. Shalala*, 37 F.3d 1466, 1467 (11th Cir. 1994); *cf. Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings . . . unless they are plainly erroneous or inconsistent with the Act or regulations").

ALJ's responsibility (and not any doctor's) to assess the RFC based on the record as a whole. *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors."); *see* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c) (the ALJ has the responsibility for determining a claimant's RFC). And the ALJ can distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record").

"Social Security regulations require the ALJ to consider many factors when evaluating medical opinion evidence. *See* 20 C.F.R. § 404.1527(d)." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). The more well-explained and well-supported an opinion is,

5

the more weight it receives. 20 C.F.R. § 404.1527(c)(3). And, "the more consistent an opinion is with *the record as a whole*, the more weight" it garners. *Id.* at (c)(4) (emphasis added).

Overlaying all that fact-intensive analysis is the principle that "the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists."[5] *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), & (5). Non-examining, consultative physicians' opinions are entitled the least weight, though the regulations still require that the ALJ consider

---

[5]  Importantly, the treating-examining-consulting hierarchy does not mandate that an ALJ always weight a treating physician's opinion more than the others.  Good cause exists to deviate from the general weighting rules if:

> 1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004). Therefore, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

*Farkas v. Astrue*, 2012 WL 750547 at * 6 (M.D. Fla. Mar. 8, 2012).

their opinions and determine that weight based upon their consistency with the evidence of record. 20 C.F.R. § 404.1527(f); *see also Tapley v. Colvin*, 2015 WL 764022 at * 3 (S.D. Ga. Feb. 23, 2015) ("As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record.") (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)).

### A.   Spinal Evidence and Physical Health Opinions

Plaintiff contends that the ALJ failed to accept the severity of his alleged back and sciatic symptoms due to improvement or limited clinical findings, a lack of significant treatment, and activities of daily living. Doc. 19. Specifically, plaintiff alleges that the ALJ improperly rejected the opinion of Dr. Agarwal—who saw plaintiff for a physical consultative examination—that Plaintiff was only able to sit, walk, and/or stand for about 4 hours in a full workday. *Id.* at 17. Plaintiff argues that the ALJ incorrectly substituted his own intuition by relying on an inconsistent expression. *Id.* at 19. To support his position, plaintiff points to other consistent information in the medical record. For example, he alleges that the ALJ incorrectly considered Social Worker Bell's determination that his gait was appropriate without considering

7

the reports of significant pain and lack of feeling. *Id.* Plaintiff also takes issue with the ALJ's reliance on his discontinuance of physical therapy, as well as the indications of improvement upon a visit with his treating physician, Dr. Horn. *Id.* at 19-20. He argues that the Court misconstrued this visit because that treatment record also indicated significant detriment. *Id.* at 20-21. Likewise, plaintiff argues that the ALJ improperly relied on his reported activities of daily living, and did not properly consider the information provided by his employer. *Id.* at 21-22.

As the Commissioner noted, however, the ALJ properly and specifically pointed to objective medical evidence, clinical findings, and treatment notes, *as well as* activities of daily living which were inconsistent with the findings of Dr. Agarwal. For example, plaintiff has repeatedly demonstrated a normal gait, normal lower extremity muscle strength, and normal range of motion. Tr. 350 (noting normal range of motion, good muscle tone, normal gate), 369 (noting unremarkable gait, normal muscle strength), 379 (noting gait/station normal, able to rise from a sitting position without assistance, unable to stand on tiptoes, heels and able to perform tandem walk without problems, unable to bend

8

and squat due to pain), 449 (noting no abnormal movements, "gait nl", pained on arising), 637 (noting normal gait, normal muscle strength), 652 (noting appropriate gait and station), 700 (noting normal gait), 766 (noting normal muscle strength), 768 (same), 770 (same), 1000 (noting appropriate gait).  Moreover, plaintiff had an active lifestyle including regular workouts; travel, including for mission trips, vacations, and visiting family; yoga; walking; church attendance; grocery shopping; and running other errands.  Tr. 349 (noting plaintiff still working out), 369 (exercise and walks 5-6 times a week), 389-90 (noting that he cooks, pays bills, walks the dog, works out, plays games on the computer, watches television, goes to church, grocery shopping occasionally, runs errands, visits family members, and goes to doctors' appointments), 435 (noting that plaintiff just returned from the Bahamas), 666 (noting yoga daily), 677 (noting recent missionary trip to Haiti), 1007 (noting travel to Jacksonville and Alabama to visit family).  To the extent there was evidence of restrictions, the ALJ properly incorporated those restrictions.  For example, the RFC requires more walking than sitting as the record contains little evidence that plaintiff cannot walk or stand.  Tr. 15.  Even if the evidence of plaintiff's activity and the restrictions

incorporated into the RFC were insufficient, Dr. Agarwal is not a treating physician, but rather is a one-time examiner. As a result, his opinion is not entitled to great weight. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

Plaintiff's reliance on *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727 (11th Cir. 2017), is misplaced. He argues that if the statements in Dr. Agarwal's report were inconsistent, then the ALJ had an obligation to seek further clarification as the ALJ was merely a layperson. Doc. 21 at 2. However, *Sampson* imposes no such duty on an ALJ. Moreover, unlike the ALJ's review of the treating physician's—and Dr. Agarwal is not a treating physician—opinion in *Sampson*, the ALJ in this case specifically identified discrepancies between Dr. Agarwal's opinion and the objective medical evidence of plaintiff's treating physicians and statements of daily activities. *See* Tr. 17 ("Dr. Agarwal's opinion regarding sitting walking, and/or walking [sic] is not supported by the evidence. He, himself noted the claimant's normal gait and that he was 'able to walk and stand up with no assistance.'"). To the extent plaintiff alleges that the ALJ had a duty to further develop the record because of the inconsistencies between Dr. Agarwal's opinion and the observed

activities, this is a red herring. An ALJ has a "duty to develop the record where appropriate." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007), but the ALJ here did that by ordering the consultative examination of Dr. Agarwal. Indeed, the ALJ did not even have the obligation to do that as consultative examinations are not required "so long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Id.* (*citing Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)). Here, there was more that sufficient evidence in the record to support the discounting of Dr. Agarwal's opinion. Accordingly, the ALJ did not err in weighing Dr. Agarwal's opinion.

### B. Mental Health Opinions

Plaintiff also argues that the ALJ improperly weighed the mental health opinion of Dr. Hartzell. Doc. 19 at 23. The ALJ discounted Dr. Hartzell's opinion that plaintiff would have difficulty interacting with the public, supervisors, and co-workers, and marked difficulty adapting to the stress of a typical work environment over a normal workday because Dr. Hartzell's examination showed that plaintiff had good eye contact, a cooperative attitude and appropriate speech. *Id*. The ALJ's

11

determination that plaintiff had only moderate limitations in social interaction was due in part to his observation that plaintiff spent time with family, went to church and restaurants, and was pleasant in clinical settings. *Id.* Plaintiff points, however, to Dr. Farley's exam for PTSD which indicated that plaintiff met the criteria for that diagnosis and that his symptoms had worsened cyclically since 2011. *Id.* at 24.

The Commissioner, in opposition, notes that while plaintiff has exhibited some mood abnormalities, the evidence indicates that his cognitive functioning—including memory, judgment and insight, attention and concentration, cooperative behavior, and goal directed thought processes—remain intact. Doc. 20 at 17 (*citing* Tr. 379, 390-91, 437, 441, 449, 453-54, 464, 471, 477, 495, 582, 488, 590, 608, 652-53, 674, 678-79, 838, 853, 881, 884, 925, 958, 1000, 1011). Likewise, plaintiff noted that he had "patience for his grandchildren, benefited from the . . . mission trip, bonded with orphans during the mission trip, looked forward to seeing a large group of people for his birthday, frequently visited with his family. and went grocery shopping with his wife." *Id.* at 17 (*citing* Tr. 390, 586, 652, 665). The Commissioner argues that this more positive assessment is bolstered by plaintiff's demonstrated positive behaviors

12

during counseling and psychiatric appointments, *id.*, and the opinions of the non-examining state agency medical consultants, *id.* at 18.

The ALJ was entitled to give little weight to Dr. Hartzell's opinion that plaintiff would have marked difficulty interacting with the public, supervisors, and co-workers. Tr. 19. As the ALJ noted then, that opinion was inconsistent with Dr. Hartzell's own observations of plaintiff's eye contact, cooperative attitude, and appropriate speech as well as ability to remember and follow simple instructions. *Id.* Moreover, other information in the record contradicts Dr. Hartzell's opinion. *See* Tr. 435 (more relaxed after an anniversary vacation and improvement in pain with improvement in mood); Tr. 457 (mood improving with spiritual counseling); Tr. 588 (thought process intact, memory normal, judgment and insight were good with limitations); Tr. 589 (noting plaintiff found therapy helpful); Tr. 590 (cooperative and sat calmly); Tr. 602 (noting withdrawn mood, but good judgment with limitations); Tr. 608 (thought process goal-directed); etc. The record is littered with references to plaintiff's mental capability. Substantial evidence supports the ALJ's determination, and no remand is necessary here.

### C. Plaintiff's Credibility

To the extent the ALJ found plaintiff less than credible, there was no error. It is the ALJ's function to determine the credibility of the witness. *Taylor v. Comm'r of Soc. Sec. Admin.*, 213 F. App'x 778, 779 (11th Cir. 2006); *Cartwright v. Heckler*, 735 F.2d 1289, 1290 (11th Cir. 1984); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1242 (11th Cir. 1983). "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004).

There is little question that some of plaintiff's statements are inconsistent. For example, he claims disabling pain, but refused to take narcotics. Tr. 766-67, 769. He indicated that he had difficulty walking and standing, but admitted to engaging in those activities during his daily life and refused to use a cane because he was "stubborn." Tr. 42. Considering these inconsistencies, the ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to produce some of the claimant's alleged symptoms; however, the claimant's statements concerning the intensity, persistence and

limiting effect of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 16.

There was no error in that finding. Substantial evidence supporting the ALJ's articulated reasons is all that is required to uphold the ALJ's decision, and, here, the record contains ample evidence supporting the ALJ's reasoning—other possible conclusions notwithstanding. *See Adefemi*, 386 F.3d at 1027; *Foote v Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dep't of Health & Hum. Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). The ALJ did not err in discounting plaintiff's statements regarding the intensity, persistence, and duration of the limitations imposed by his symptoms, *see both* SSR 96-7p *and* SSR 16-3p, and his credibility finding should be affirmed.[6]

---

[6] The Court must express concern as to some of the statements made by the ALJ in this case. Among other things, he indicated that a diagnosis of PTSD was "fashionable" and that "[i]t used to not exist, but now it exists." Tr. 40. He also stated that plaintiff was "obviously, . . . not mentally retarded," that the ALJ was "not a big fan of the Veterans Administration," and that he "had my doubts as to [their] ability to take care of other things." Tr. 41. Plaintiff was entitled to a full and fair hearing. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). In order to achieve this, the ALJ must not be prejudiced. *See* 42 C.F.R. § 404.940. While an ALJ is presumed unbiased, *Schweiker v. McClure*, 456 U.S. 188, 195 (1982), when a bias "stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case," it may become disqualifying, *Borgen v. Halter*, 164 F. Supp. 2d 1309, 1329 (M.D. Fla. 2001) (*quoting United States v. Grinnel Corp.*, 384 U.S. 563 (1966).

Despite its discomfort with the ALJ's remarks, the Court is limited to the arguments

## III. CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED.**

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*,

---

raised in the briefs.  And a plaintiff "waive[s] all challenges to the ALJ's decision except the one[s] briefed."  *Jones ex rel. Martensen v. Colvin*, 2015 WL 4770059 at *3 n. 3 (S.D. Ga. Aug. 12, 2015) (*citing Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n. 1 (11th Cir. 2013)).

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this <u>25th</u> day of July, 2019.

/s/ Christopher L. Ray
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA